COBB, Judge.
Ryder Truck Lines, Inc. (Ryder) entered into a lease arrangement with Georges Motor Express, Inc. (Georges), whereby Georges would haul shipments for Ryder. Georges agreed to indemnify Ryder and to provide insurance. Georges used The Gateway Agency, Inc. (Gateway), an agency of an insurance broker called Interstate Agencies Group (Interstate), to procure insurance from Transit Casualty Company (Transit). The Transit policy became effective on March 1, 1975, and provided Georges with various coverages, including truck cargo insurance of $1,000,000 per occurrence.
On May 2, 1975, Gateway sent a request to Transit to cancel Georges’ policy due to non-payment of premium. In response, on May 6, 1975, Transit sent Georges notification that its policy would be canceled on June 11,1975, for non-payment of premium. In a follow-up letter, Gateway explained to Transit that Georges had informed Gateway that Georges had greatly reduced its estimate of its annual gross income. Georges subsequently procured a cargo policy with Royal Globe Insurance Company (Royal Globe) effective June 20, 1975, providing coverage of $250,000 per occurrence.
Pursuant to its lease agreement with Ryder, Georges loaded a shipment of beef in Denver on June 19, 1975. A partial delivery and full inventory was made in New York on June 22, 1975, and a number of cases of meat were discovered to be missing. A second New York delivery and inventory was made on June 23, 1975, and more cases of meat were missing.
Ryder paid the beef producer for the loss of the meat, and then Ryder sued Transit, *897 Interstate, and Royal Globe. Ryder settled with Interstate and Royal Globe. Ryder recovered a judgment against Transit for the remainder of the loss.
The Transit policy had an “other insurance” clause, making it an excess policy, but it did not have any cancellation provisions. At trial, Transit raised two defenses. First, Transit contended that the policy had been effectively cancelled. At the end of the trial, the trial court found that since there was no provision regarding cancellation in the Transit policy, the policy could only be cancelled by mutual agreement or by anticipatory breach; that neither was shown by the evidence; and, therefore, there was coverage for Ryder under the Transit policy. As a second defense, Transit contended that since it was only an excess insurer, its policy did not provide coverage until the insured, Georges, showed that there was no other collectible insurance. The trial court decided that the burden of showing no other collectible insurance was on Transit.
We disagree with the trial court on both points of law. The actions of Georges with regard to its Transit policy show an intent to abandon the Transit policy in favor of a less expensive policy due to financial reasons. See 45 C.J.S. Insurance § 443 (1946); 3A Appleman’s Insurance Law and Practice § 1840 (1975). The actions of Transit show that it consented to Georges’ abandonment. Thus, the Transit policy was cancelled by mutual consent.
We recognize that other jurisdictions have held that the duty of proving other insurance is on the insurer as a defense. 21 Appleman’s Insurance Law and Practice § 12246 (1969); State v. National Auto Ins. Co., 290 A.2d 675 (Del.1972); Bosko v. Pitts & Still, Inc., 75 Wash.2d 856, 454 P.2d 229 (1969). However, we agree with the differing view that it is the insured’s duty to show that he has exhausted all other insurance as a condition precedent to collecting from an excess insurer. Spur-geon v. State Farm Mut. Ins. Co., 169 So.2d 343 (Fla. 1st DCA 1964). Whether there is other insurance that is collectible is to be decided as of the time of the incident, rather than the time of the trial. State Farm Mut. Ins. Co. v. Vines, 193 So.2d 180 (Fla. 1st DCA 1966).
Due to our decision on the merits, the award of attorney’s fees at the trial level is also reversed.
REVERSED.
ORFINGER and UPCHURCH, JJ., concur.